IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Civil Case No. _____ |
| WILLIAM W. CALVERT, | ) ) ) |
| Defendant. | ) |

## COMPLAINT

The United States of America, by Jeffrey P. Ray, Acting United States Attorney for the Western District of Missouri, brings this action for treble damages and civil penalties under the False Claims Act, 31 U.S.C. §§ 3729, *et seq.* or, in the alternative, for repayment under theories of payment by mistake and unjust enrichment.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 31 U.S.C. § 3730(a) and 28 U.S.C. § 1345.

2. Venue is proper in the Western District of Missouri pursuant to 31 U.S.C. § 3732(a), 28 U.S.C. § 1391(b), and 28 U.S.C. § 1395(a).

## PARTIES

3. The plaintiff is the United States of America on behalf of the United States Railroad Retirement Board ("RRB").

4. Defendant William W. Calvert ("Calvert") is a resident of the State of Missouri and resides in Kansas City, Missouri.

## FACTUAL BACKGROUND

5.  The Railroad Unemployment Insurance Act, 45 U.S.C. §§ 351, *et seq.*, provides federal benefits for unemployed railroad workers and is administered by the RRB.

6.  To qualify for these federal benefits, unemployed railroad workers who meet the income and resource requirements of the program must disclose to the RRB any employment and income that might affect the claimant's entitlement to benefits. Benefits cannot be claimed or paid for any date that the claimant worked, accrued, or received compensation from any employer, including non-railroad employers.

7.  Calvert was employed by Burlington Northern Santa Fe Railway ("BNSF") as an engineer and was then furloughed on or about July 20, 2019. Calvert's employment at BNSF enabled him to be eligible to collect RRB unemployment insurance benefits after he was furloughed during his period of unemployment.

8.  On March 4, 2020, Calvert submitted an electronic RRB Form UI-1, "Application for Unemployment Benefits and Employment Service," through RRB's benefits online service. This application generated Calvert's unemployment insurance benefit.

9.  On the introduction page of the RRB's Online Unemployment Benefit Application, the applicant is instructed to read RRB Booklet UB-10 "Unemployment Benefits for Railroad Employees" before starting the RRB Form UI-1 Application.

10. Calvert submitted the Application on or about March 4, 2020, and agreed to Section F – Certification, which states: "I certify that the information I have provided on this form is true, correct and complete. I know that I must immediately report to the Railroad Retirement Board any changes which might affect my entitlement to benefits. I understand that disqualifications and civil and criminal penalties may be imposed on me for false or fraudulent

2

statements or claims or for withholding information to get benefits. I understand and agree to the requirements set forth in Booklet UB-10."

11. RRB Booklet UB-10 stated, in part:

TO RECEIVE UNEMPLOYMENT BENEFITS YOU MUST

- be unemployed and receive no wages, salary, military reservist pay, pay for time lost, vacation pay, holiday pay, guarantee pay, or other remuneration from railroad or nonrailroad employment for the days you claim benefits. Under certain conditions, part-time work does not affect entitlement to benefits. However, you must report all full-time and part-time work you perform to the Railroad Retirement Board (RRB) on each claim for benefits you file. The RRB will then determine whether your pay is "subsidiary remuneration" and whether benefits are payable for days on which you worked part-time.

12. RRB Booklet UB-10 further warned: "You will be disqualified for both unemployment and sickness benefits for 75 days if you make a false or fraudulent statement or claim in order to receive benefits."

13. On or about March 4, 2020, Calvert submitted an RRB Form UI-35, "Field Office Record of Claimant Interview" where he signed Section 6 of the document certifying that the information provided is true and correct and he understood that a fine and a jail sentence might be imposed for false or fraudulent statements or claims. By signing the certification, Calvert agreed to all the requirements set forth in U.S. RRB UB-10 Booklet, which further describes the rules and reporting requirements of collecting UI benefits.

14. On the Introduction page of the Railroad Retirement Board's Online Claim for Unemployment Benefits it states the claimant is to carefully read RRB UB-10 Booklet prior to completing the RRB UI-3 claim form.

15. On or about March 4, 2020, Calvert submitted U.S. RRB Form UI-35c, Claimant's Certification and Authorization Under the Railroad Unemployment Insurance Act. This document

3

Case 4:25-cv-00550-RK    Document 1    Filed 07/16/25    Page 3 of 9

further explains the rules and regulations for claiming UI benefits he must be unemployed and that he must report any type of railroad or non-railroad employment.

16. On the RRB's website there is a link to the RRB Booklet UB-10 "Unemployment Benefits for Railroad Employees" with instructions for completing "Application for Unemployment Benefits and Employment Service," Form UI-1 as well as instructions for completing "Claim for Unemployment Benefits," Form UI-3.

17. In order to receive unemployment or sickness benefits, Calvert was required to submit RRB Form UI-3, "Claim for Unemployment Benefits," and/or RRB Form SI-3, "Claim for Sickness Benefits" every two weeks. Calvert submitted his claims through the U.S. RRB Benefit Online Services Web Page located at www.rrb.gov. Prior to completing the UI-3/SI-3 claim electronically, Calvert was required to apply for a Password Request Code ("PRC") to set up an RRB internet account and establish a PIN/Password. Only covered railroad employees can obtain an RRB internet account.

18. Calvert filed approximately 26 false UI-3/SI-3 claims during the period beginning July 28, 2019, through the UI/SI claim period beginning October 5, 2020. Calvert completed each claim and indicated that he was not working and proceeded to claim all days as days of unemployment/sickness. Also, Calvert certified that he knew disqualifications and civil and criminal penalties may be imposed on him for false or fraudulent statements or claims or for withholding information to get benefits and that the information on the claims are true, correct, and complete.

19. Question number 1 on each UI-3 claim form asked Calvert to indicate if he was employed or unemployed for every day in the claim period. Question number 5(a) on each UI-3 form asks, "Have you worked for a non-railroad employer since your last day of railroad work?"

4

Case 4:25-cv-00550-RK    Document 1    Filed 07/16/25    Page 4 of 9

Question number 7(a) asks, "Did you work on any claimed day for any person or company or were you self-employed?" On each UI-3 form, Calvert certified the form was true, correct, and complete yet he failed to reveal his employment with a non-railroad employer. This resulted in false claims or omissions that were submitted to the Government.

20. Question number 1 on each SI-3 claim form asked Calvert to indicate if he was employed or unemployed for every day in the claim period. Question number 5(a), 5(b), and 5(c) on each SI-3 form asked Calvert to indicate any railroad and nonrailroad wages, governmental payments, or other payments he had received during the claim period. On each SI-3 form, Calvert certified the form was true, correct, and complete yet he failed to reveal the wages/payments he had received during the claim period. This resulted in false claims or omissions that were submitted to the Government.

21. Calvert was employed with Schwihag Track and Switch Technology, Inc., Dynamic Consultants Group LLC, and Vilano Employment Service during the UI/SI claim periods beginning July 28, 2019, through the UI/SI claim period beginning October 5, 2020. Calvert knew he was employed and he continued to submit claims for unemployment and/or sickness benefits. During this period, Calvert submitted approximately 26 false claims or omitted information material to the U.S. RRB to determine his UI/SI eligibility.

22. The Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), signed into law in March 2020, authorized extended unemployment insurance benefits for railroad workers sidelined during the COVID-19 pandemic. The CARES Act provided $1,200.00 recovery benefits to a qualified employee for any UI/SI registration period beginning on or after April 1, 2020, but no later than July 31, 2020. Calvert was purportedly eligible for the enhanced CARES Act payments for registration periods 04/06/2020, 04/20/2020, 05/04/2020, 05/18/2020,

5

06/01/2020, 06/15/2020, 06/29/2020, 07/13/2020, and 07/27/2020 because of his false claims of unemployment/sickness. The CARES Act payments to Calvert totaled $10,800.

23. In seeking and receiving unemployment insurance benefits, Calvert concealed material facts, to wit, his non-railroad employment and his earnings therefrom, when he knew or should have known that this employment was material to the RRB.

24. But for Calvert's false statements and claims, he would not have received unemployment or sickness insurance benefits for claim period beginning July 28, 2019, through claim period beginning October 5, 2020. The unemployment and sickness insurance benefit payments totaled $16,163.82.

25. But for Calvert's false statements and claims, he would not have received CARES Act payments for the claim period beginning April 6, 2020, through the claim period beginning July 27, 2020. The CARES Act payments totaled $10,800.

26. As a result of Calvert's actions, the United States has been damaged in the amount of $26,963.82.

## COUNT I
### Violation of the False Claims Act
### 31 U.S.C. § 3729(a)(1)(A)

27. The United States repeats and realleges each allegation set forth above in paragraphs 1 through 26 as if set forth fully herein.

28. By virtue of the acts described above, Calvert knowingly presented, or caused to be presented, false or fraudulent claims for payment or approval in violation of the False Claims Act, 31 U.S.C. §§ 3729-3733.

29. As used in this count, the term "knowingly" means that a person, with respect to information: (a) has actual knowledge of the information; (b) acts in deliberate ignorance of the

6

truth or falsity of the information; or (c) acts in reckless disregard of the truth or falsity of the information.

30. The United States paid the false or fraudulent claims because of the acts of Calvert and, as a result, the United States has incurred actual damages in the amount of $26,963.82, exclusive of interest and costs.

31. Pursuant to the False Claims Act, 31 U.S.C. § 3729(a)(1), as amended, Calvert may be liable to the United States under the treble damage and civil penalty provision of the False Claims Act for a civil penalty of not less than $14,308 and not more than $28,619 for each of the false or fraudulent claims herein,[1] plus three times the amount of damages that the United States has sustained because of Calvert's action.

## COUNT II
## Payment By Mistake

32. The United States repeats and realleges each allegation set forth above in paragraphs 1 through 26 as if set forth fully herein.

33. The United States made payments on the claims submitted by Calvert under the erroneous belief that the claims for payment were based upon representations that were factually accurate and that represented actual dates of unemployment.

34. The United States' erroneous belief was material to the payments made by the United States to Calvert.

35. Because of these mistakes of fact, Calvert received monies to which he is not entitled.

---

[1] The civil penalty amounts of not less than $5,000 and not more than $10,000 are adjusted to account for inflation. *See* 28 U.S.C. § 2461 (the Federal Civil Penalties Inflation Adjustment Act of 1990); *see also* 28 C.F.R. § 85.5.

36. By reason of the overpayments described above, the United States is entitled to damages in the amount of at least $26,963.82.

## COUNT III
## Unjust Enrichment

37. The United States repeats and realleges each allegation set forth above in paragraphs 1 through 26 as if set forth fully herein.

38. This is a claim by the United States for recovery of monies by which Calvert has been unjustly enriched.

39. Because of Calvert's conduct, he has been unjustly enriched with federal monies that in good conscience he should not be allowed to retain.

40. Calvert has been unjustly enriched to the detriment of the United States in the amount of $26,963.82.

## PRAYER FOR RELIEF

WHEREFORE, the United States demands judgment against the defendant as follows:

(a) on Count I (False Claims), judgment against defendant for treble the United States' single damages of $26,963.82, plus civil monetary penalties as set forth in the False Claims Act;

(b) on Count II (Payment by Mistake), judgment against defendant for single damages, pre- and post-judgment interest, and any such further relief as the Court deems appropriate; and

(c) on Count III (Unjust Enrichment), judgment against defendant for single damages, pre- and post-judgment interest, and any such further relief as the court deems appropriate.

9

## REQUEST FOR PLACE OF TRIAL

The United States demands a trial by jury as to all issues so triable, and the United States requests that trial of the above-entitled matter be held in Kansas City, Missouri.

Respectfully submitted,

Jeffrey P. Ray
Acting United States Attorney

By:    */s/ Matthew N. Sparks*
      Matthew N. Sparks    MO #63260
      Assistant United States Attorney
      Charles Evans Whittaker Courthouse
      400 East Ninth Street, Room 5510
      Kansas City, Missouri 64106
      Telephone:  (816) 426-3130
      Facsimile:  (816) 426-3165
      E-mail:  matt.sparks@usdoj.gov
ATTORNEYS FOR PLAINTIFF
UNITED STATES OF AMERICA